WALTER OSBORN *vs.* THE HARTFORD AND NEW HAVEN RAIL-
ROAD COMPANY.

By statute (Gen. Statutes, tit. 64, sec. 23,) the real estate of corporations
" above what may be required and used by them for the transaction of their
appropriate business," is taxable in the town where situated. Held that a
railroad company could provide such wharves and docks as would accommo-
date its business when most abundant and pressing; and that the fact that
such accommodations were not at all times in use by the company did not
show that they were above what was required for its appropriate business.

Where the wharves were used to some extent by vessels with freight not intended
for the railroad company, and in which it had no interest, and for which use
the railroad company charged wharfage, but such use was at times when the
wharves were not needed for the use of the company and was in subordination
to that use—it was held that this fact did not render the property taxable as
above what was needed for the appropriate business of the company.

A portion of a building upon the dock was leased by the railroad company to a
steamboat company for the storage of freight. Whether this portion of the
property would not become liable to taxation : *Quære.*

The railroad company was authorized by its charter to own and run steamboats
in connection with its road. Instead of doing this it made an arrangement
with a steamboat company in which it had no interest, to run its boats from *its*
wharves, freight being way-billed through and the gross receipts divided in
certain agreed proportions. The court inclined to regard the arrangement as
an indirect mode of exercising its charter rights with regard to running steam-
boats, and the premises used by the steamboat company as not liable, by rea-
son of such use, to local taxation.

But whether so or not, yet clearly the whole property was not rendered taxable
by reason of such renting to the steamboat company.

ASSUMPSIT, for recovery of sundry taxes claimed to be due
to the plaintiff as collector of taxes for the city and town of
New Haven: brought to the Superior Court in New Haven
County.

The taxes were laid upon certain docks and wharves belong-
ing to the defendants, upon assessments made in the years
1868 and 1869, and it was conceded that the taxes were
recoverable if the docks and wharves were properly taxable.
By statute (Gen. Statutes, tit. 64, sec. 23,) " the real estate
belonging to any private corporation, over and above what
may be required and used by such corporation for the transac-

tion of its appropriate business, shall be liable to be assessed and set in the list of such corporation in the town where such real estate is situated, and shall be liable to taxation to the same extent as if owned by an individual." The following facts were found by a committee.

The wharves and docks in question are situated in New Haven and belong to the defendants. The real estate on which they are located and with which they are connected had, prior to October 1st, 1868, been taken for the purposes of the company, by the authority and approval of the railroad commissioners, under the provisions of the law and of their charter. The property has been from time to time extended and enlarged, and docks have been built and are appropriated to different branches of their business, one for coal, another for lumber. Since 1869 an additional wharf, called the Benedict wharf, has been purchased by them. The defendants have also erected extensive buildings on the property to facilitate the operations of their business there.

The business of the defendants at tide water in New Haven is extensive, and their wharves and docks are important and appropriate means of connecting their business as a railroad company with water communication by all sorts of vessels. The property is no more extensive than the exigencies of the business, present and prospective, properly call for, but their own business as a railroad company does not at all times and under all circumstances require for its accommodation the use of all the property. Their business in 1868 and 1869 was and still is arranged and conducted so that they can and do, from time to time, suffer portions of the property to be used for purposes not connected with their railroad business, in the manner to be stated.

The defendants formerly owned steamboats, which they ran in connection with their railroad, but since 1867 they have had no boats of their own, but have run their cars in connection with the boats of an independent corporation, the New York and New Haven Steamboat Company. A very important branch of the defendants' business at their wharves and docks is done under an arrangement with this

company, whereby a continuous line of transportation is formed between New York and the several stations on the defendants' road. The arrangement between the parties, though not in writing, is well understood, and has been acted on for several years, including the years 1868 and 1869. Freight is way-billed through, as it would be were the steamboat company and the defendants one company, and the gross receipts are divided between the two corporations in certain agreed proportions. The cars of the railroad company run along-side of platforms in one of the buildings, and the exchange of freight takes place on these platforms. The steamboat company delivers its freight into the defendants' cars there, and there receives its freight from the cars. The principal wharf and a room immediately connected with it are chiefly used and occupied by the steamboat company. Freight passes through this room in the progress of its exchanges between the steamboats and the railroad.

The steamboat company is the carrier of freight to and from New Haven, and also of freight to and from places connected with New Haven by other railroads besides that of the defendants. This freight does not pass over the defendants' road, and the defendants have no interest in this branch of the business of the steamboat company. The room referred to is used mainly for the storage of this freight in its transit to and from the boats, but it is occasionally used also for temporary storage of the defendants' freight. The railroad company charge the steamboat company a moderate rent for the use of the wharf and for the other privileges which the latter enjoy at the wharf and docks and in the buildings of the defendants.

The railroad company receive freight at their docks from vessels other than the boats of the steamboat company. Most heavy articles are thus received, as coal, lumber, &c.; and the defendants send heavy articles from these wharves and docks by other vessels. To vessels thus bringing freight the defendants charge wharfage upon the vessel only, if the freight is for their road; and upon the vessel and cargo both, if the cargo is not to be carried on the defendants' road, as when

consigned to parties in the city of New Haven, or to be taken from New Haven by other railroads.

Upon these facts the case was reserved for the advice of this court.

*Doolittle* and *Bennett*, for the plaintiff.

*Watrous*, for the defendants.

SEYMOUR, C. J.  By the 23d section of the act for the assessment of taxes, the real estate of corporations " over and above what may be required and used by them for the transaction of their approximate business," is made liable to taxation in the town where situated.  This local tax operates generally as a double burden, but by the acts of 1868, chapter 68, railroad and horse railroad companies are relieved from that effect of the statute.

The only question for us to decide here is, whether the wharf and dock property of the defendants in the city of New Haven is, within the fair meaning of the statute, required and used by them in the transaction of their appropriate business.

The business of a company like that of the defendants necessarily varies in different years and at different seasons of the year.  The company may provide such wharves and docks as will accommodate their business when most abundant and pressing.  The mere fact that they do not use all their grounds and fill all their buildings at all times and under all circumstances, does not indicate that the grounds and buildings are over and above what is required " for their appropriate business."  It is obvious from the report of the committee that the object of the defendants in obtaining the property in question was the accommodation of their own business, and that the property is required for that purpose.  It is also most of it in fact used in the business of the defendants.  The freight for their road is received at their docks and the freight from their road is sent from their docks.

But it is also true, as claimed by the plaintiff, that the

property is not *exclusively* used in the business of the company as a railroad corporation. The docks are used to some extent by vessels with freight which is not to pass over the defendants' road and in which the defendants have no interest, and in respect to such vessels the defendants charge wharfage as wharfingers; and the point is strongly insisted upon, that by reason of this use of the docks the property becomes taxable under the statute.

The extent to which the docks are thus used for purposes not immediately connected with the defendants' railroad is not found. It is however to be inferred from the whole finding that the use is only at times when the docks are not needed for immediate use in railroad business, and is subordinate to that business. The finding however raises the question of law whether the property, in order to be exempt from local taxation under the statute, must be literally and exclusively devoted to the business of the railroad, and whether incidental and occasional other and foreign uses subject it to the operation of the statute.

We think that if the property is designed for the appropriate business of the railroad company, and is primarily and mainly so used, it does not become subject to local taxation by reason of incidental and occasional use for other purposes. The words of the statute subject property not used by the company for its appropriate business. These docks are so used, but not exclusively so used. The statute does not in words nor in spirit require such exclusive use.

In regard however to one of the rooms it is found that it is used mainly for the storage of freight brought by the steamboats, of which the defendants are not owners, and that the defendants receive a rent from the steamboat company for the use of this room. It is true that the defendants occasionally use this apartment, but substantially it is rented. It is however rented to a steamboat company, which company, by an arrangement with the defendants, is doing a business which is within the chartered powers of the defendants; that is, the defendants are exercising their chartered power in respect to steamboat business, not directly and immediately, but indi-

rectly, by means of the steamboat company as a sort of co-partner.

We doubt whether this use of the room is so foreign from the appropriate business of the defendants as to make the room taxable under the statute in question. We however have no occasion to decide that point, for the assessment is not upon this room, but upon the entire wharves and docks of the defendants ; and it is clear, we think, that neither the use of this room by the steamboat company, nor the occasional use of the wharves for freight in which the defendants are not interested, properly subjects the entire property to local taxation.

We therefore advise the Superior Court to render judgment for the defendants.

In this opinion the other judges concurred.